# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5192 | **DATE** | 8/14/2003 |
| **CASE TITLE** | NINOS ANAEL vs. INTERSTATE BRANDS CORP. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. The amended complaint is dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | **Document Number** |
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | | AUG 18 2003 | 30 |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | | docketing deputy initials | |
| | Mail AO 450 form. | | U.S. DISTRICT COURT | | |
| | Copy to judge/magistrate judge. | | CLERK | | |
| LG | courtroom deputy's initials | 03 AUG 15 PM 7:09 | FILED FOR DOCKETING | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**DOCKETED**

AUG 1 8 2003

NINOS ANAEL, RICH HARDIN,           )
DANIEL WAGGENER, and JOHN           )
COLON, individually and on behalf of all )
others similarly situated,          )
                                    )           Case No. 02 C 5192
    Plaintiffs,            )
                                    )           Honorable John W. Darrah
                                    )
    v.                     )
                                    )
INTERSTATE BRANDS CORP., a Delaware )
corporation doing business in Illinois; )
INTERSTATE BAKERIES CORP., a Delaware )
corporation doing business in Illinois; )
CHARLES SULLIVAN, individually and in his )
official capacity; ROBERT MORGAN,   )
individually and in his official capacity; )
DANIEL ANGST, individually and in his )
official capacity; VINCE CALABRESE, )
individually and in his official capacity; )
RATHINASAMY RAYAPPA, individually and )
in his official capacity; ROBERT KNORRECK, )
individually and in his official capacity; )
RUSSELL HINKLE, individually and in his )
official capacity; NANCY YDE, individually )
and in her official capacity; PETER TAGALOS, )
individually and in his official capacity; )
CHARLES SHRINER, individually and in his )
official capacity; ARMANDO IANELLI, )
individually and in his official capacity; )
JAMES CARR, individually and in his )
official capacity; JESUS TORRES, individually )
and in his official capacity; VINCE JOLLY, )
individually and in his official capacity; )
and JOHN TELO, individually and in his )
official capacity,                  )
                                    )
    Defendants.            )

-1-



## MEMORANDUM OPINION AND ORDER

Plaintiffs, Ninos Anael ("Anael") and Richard Hardin ("Hardin"), filed a two-count complaint against Defendants, Interstate Brands Corporation, Interstate Bakeries Corporation, Charles Sullivan, Robert Morgan, Daniel Angst, Vince Calabrese, Rathinasamy Rayappa, Robert Knorrek, Russell Hinkle, Nancy Yde, Peter Tagalos, Charles Schriner, Armando Ianelli, James Carr, Jesus Torres, Vince Jolly, and John Telo (collectively "Defendants"), in the Circuit Court of Cook County, Illinois.

Defendants removed the action to this Court and subsequently moved to dismiss. In response to Defendants' initial motions to dismiss, Plaintiffs were granted leave to file an amended complaint, which added two new plaintiffs, Daniel Waggener ("Waggener") and John Colon ("Colon"). Defendants, pursuant to Federal Rule of Civil Procedure 12(b)(6), move to dismiss the First Amended Complaint.

Three previous suits have been filed by one or more of the Plaintiffs against some of the Defendants in the present action. In the first action, Anael filed a complaint against Interstate Bakeries Corporation in the Northern District of Illinois, alleging employees at the Schiller Park facility had been injured by exposure to asbestos partly as a result of the removal of insulation from a hot water tank in January 1998 and by ingesting contaminated snack cakes. *See Anael v. Interstate Bakeries Corp.*, No. 98 C 1057 (N.D. Ill. filed Feb. 17, 1998) (*Anael I*)[1]. The court held that the

---

[1]"In ruling on a 12(b)(6) motion, a district court may take judicial notice of matters of public record without converting the 12(b)(6) motion into a motion for summary judgment." *Anderson v. Simon*, 217 F.3d 472, 474-75 (7th Cir. 2000). Federal Rule of Evidence 201 provides that a court may take judicial notice of facts that are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). The

Illinois Workers' Compensation Action ("IWCA"), 820 Ill. Comp. Stat. 305/1 *et seq.*, was the employees' exclusive remedy and dismissed their claims. On September 18, 1998, Anael voluntarily dismissed the remaining claims.

In the second action, Anael, Colon, and another employee filed a lawsuit in the Northern District of Illinois against Interstate Brands Corporation, alleging discrimination based on race or national origin and retaliation by exposure to asbestos and threats. *See Anael v. Interstate Brands Corp.*, No. 98 C 1969 (N.D. Ill. filed Apr. 1, 1998) (*Anael II*). On June 14, 1999, the action was dismissed with prejudice; and, on January 31, 2000, costs in the amount of $3,009.77 were taxed to Anael.

In the third action, Anael sued Interstate Brands in the Northern District of Illinois, alleging discrimination and retaliation based on his national origin and his complaint to OSHA and the EPA of alleged asbestos exposure in January 1998 and that he was discharged in August 1999 in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Toxic Substances Control Act, 15 U.S.C. § 2622. *See Anael v. Interstate Brands Corp.*, No. 00 C 6765 (N.D. Ill. filed Oct. 30, 2000) (*Anael III*). Anael's discrimination and retaliation claims were dismissed with prejudice on May 31, 2001. On September 19, 2002, the court granted Interstate Brands' motion for summary judgment, dismissed Anael's claims with prejudice and denied Anael's motion to amend the complaint to add RICO claims. Costs in the amount of $8,251.09 were taxed to Anael.

Defendants move to dismiss on the additional grounds of *res judicata*.

_____

rulings of the other district courts are capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned, and Defendants have provided them to the Court. Therefore, the Court takes judicial notice of the rulings in these other cases.

### The 12(b)(6) Motion

When considering a motion to dismiss, well-pleaded allegations in the complaint are accepted as true. *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319 (7th Cir. 1997). Any ambiguities in the complaint are construed in favor of the plaintiff. *Kelly v. Crosfield Catalysts,* 135 F.3d 1202, 1205 (7th Cir. 1998). Dismissal is proper only when it appears beyond doubt that Plaintiff can prove no set of facts to support the allegations in his or her claim. *Strasburger v. Board of Education*, 143 F.3d 351, 359 (7th Cir. 1998).

"Although the Federal Rules of Civil Procedure do not require a plaintiff 'to set out in detail the facts upon which he bases his claim,'. . . he must 'set out sufficient factual matter to outline the elements of his cause of action or claim, proof of which is essential to his recovery.'" *Benson v. Cady*, 761 F.2d 335, 338 (7th Cir. 1985) (internal citation omitted). A complaint will not avoid dismissal if it contains "bare legal conclusions" absent facts outlining the basis of the claims. *Perkins v. Silverstein*, 939 F.2d 463, 467 (7th Cir. 1991).

For purposes of these Motions to Dismiss, the following allegations are taken as true.

Interstate Brands Corporation ("Interstate Brands") is a wholly owned subsidiary of Interstate Bakeries Corporation ("Interstate Bakeries") (collectively "Corporate Defendants"). Interstate Brands operates a baking facility in Schiller Park, Illinois, producing a variety of products under the "Hostess" brand name. The individual Defendants are all present or former employees of the Corporate Defendants.

In 1995, Interstate Bakeries and Interstate Brands acquired the Schiller Park facility. At that time, the Schiller Park facility had asbestos-lined pipes and older ovens and machinery, which required the use of graphite lubricants to maintain them in operating condition. In order to maintain

the ovens in good working condition, the ovens would be shut down two to three days a year for cleaning. Due to its age, the plant required upgrading and modernization to produce food products safely.

In the mid-1990's, Interstate Bakeries devised a scheme to maximize income through the acts described as follows. Interstate Bakeries provided Interstate Brands with an annual budget. Expenditures outside the budget had to be approved by Interstate Bakeries' corporate headquarters in Kansas City, Missouri. However, Interstate Bakeries discourages such expenditures even if they are for food or employee safety or for facility maintenance. Interstate Bakeries also set production goals for Interstate Brands. Whether or not the production goals are met is a factor in determining whether the facility's managers are eligible for bonuses and stock purchase plans. However, whether the facility's food product and machinery are safe and whether the facility is complying with federal laws is not a factor in determining management's compensation.

Although Interstate Bakeries knows that the ovens need to be maintained, the necessary shutdown and cleaning of the ovens has not taken place for at least three or four years. Due to complaints made to the Occupational Safety and Health Administration ("OSHA") and the Federal Food and Drug Administration ("FDA"), Interstate Bakeries is aware that food products made at the Schiller Park facility are contaminated with graphite from the machinery. Interstate Bakeries adopted a corporate policy of contesting OSHA and other governmental violations and delaying the time by which it will have to remove the machinery from production.

From 1995 until the present time, Interstate Bakeries: failed to provide employees with necessary safety precautions in the workplace to avoid harmful exposure to toxic and poisonous substances, namely asbestos and graphite; permitted contamination of food products with asbestos

and graphite; sold these contaminated products at a discount to employees; permitted and failed to correct serious OSHA violations; harassed and dismissed employees who reported safety or health violations to government authorities; encouraged its employees to harass and dismiss employees who report such violations; permitted untrained employees to use chemicals, resulting in OSHA violations and injuries. Interstate Bakeries undertook this course of conduct in order to maximize its profits and reduce costs. Interstate Bakeries has posted substantial profits and recently announced a secondary public offering of its stock.

Patrick Andrew Kelleher ("Kelleher"), a non-party, was formerly employed by Continental Baking. In 1994, the Schiller Park facility was owned by Ralston-Purina, Inc. At that time, Defendants, Vince Chuck Shriner ("Shriner"), Armando Ianelli ("Ianelli"), and Vince Calabrese ("Calabrese"), were employed as supervisors in the Maintenance Department, positions they continued to occupy after the Schiller Park facility was acquired by Interstate Brands in 1995. Defendant, Rathinasamy Rayappa ("Rayappa"), was the head of the Maintenance Department at the Schiller Park facility, a position he occupied after the facility's acquisition by Interstate Brands.

Kelleher was a maintenance mechanic and union steward at the Schiller Park facility. He contacted OSHA about presumed asbestos located throughout the Schiller Park facility, including at least one of the exhaust stacks over the oven on Line 3, commonly known as the "Twinkie" oven. After Kelleher's complaint, management at the Schiller Park facility began assigning Kelleher to the least desirable job and issuing written reprimands for alleged rule infractions that were not usually pursued or did not usually result in a written reprimand. This was done in order to encourage Kelleher to resign. In 1994, Kelleher was terminated for alleged rule violations. The alleged OSHA violations were not corrected.

Harry White ("White"), a non-party, worked for Interstate Brands from August 1997 through on or about December 8, 1997. In December 1997, White informed Calabrese and Rayappa that the insulation in the Schiller Park facility's boiler room probably contained asbestos and needed to be removed. White told Calabrese that, when White had worked at other places where asbestos had been removed, safety equipment had been purchased or a private company had been hired. White suggested several companies that could safely remove the asbestos.

Prior to this time, Plaintiff Anael, had complained about working conditions at the Schiller Park facility. Management then began to assign him to undesirable jobs and issued him written reprimands in order to encourage him to resign. In December 1997, Defendants Calabrese and Rayappa told White that the asbestos would be removed and that Plaintiff Anael should be assigned to that task. White resigned from Interstate Brands in December 1997.

In January 1998, Defendant Calabrese ordered Plaintiff Anael and others to remove insulation from an unused water tank and some of the pipes in the boiler room at the Schiller Park facility. Defendant Calabrese did not provide any protective equipment for Plaintiff Anael or the others. Plaintiff Anael asked Defendant Calabrese if the insulation in the boiler room contained asbestos. Defendant Calabrese told Plaintiff Anael that the insulation had been tested and that the entire bakery plant was asbestos-free, even though no such tests had been done.

The boiler room was not sealed during the removal process, and dust containing asbestos was released into the main bakery, where hundreds of employees were exposed to the asbestos. Food products were also exposed to the asbestos.

On or about January 20, 1998, Plaintiff Anael had pieces of the insulation tested at a laboratory. The test results revealed that the samples contained one of the most toxic forms of

asbestos. The laboratory told Plaintiff Anael that he should contact OSHA and the Environmental Protection Agency ("EPA"). On or about January 22, 1998, Plaintiff Anael reported the test results to OSHA and the EPA. Plaintiff Anael also informed OSHA and the EPA that Defendants used unlicensed, untrained employees to remove asbestos without any protective safety equipment. On January 23, 1998, OSHA and the EPA arrived at the Schiller Park facility to take samples of the insulation in the boiler room. As a result, OSHA temporarily closed the Schiller Park facility and imposed a $910,000 fine on Interstate Brands.

Plaintiff Anael received numerous threats for having reported the asbestos contamination at the Schiller Park facility to OSHA and the EPA. Two threats came from an Interstate Brands supervisor, Defendant Jesus Torres, and an operations manager, Defendant Peter Tagalos.

Defendant, James Carr ("Carr"), was the head of the Maintenance Department at the Schiller Park facility. On or about August 5, 1998, Defendant Carr sent a certified letter by United States Mail to Plaintiff Anael's home. This letter stated that Plaintiff Anael had until 4:00 p.m. on August 6, 1998, to contact the Human Resource Department at the Schiller Park facility or else he would be fired. The complaint does not allege what events led up to the mailing of this letter.

Plaintiff Anael called Defendant, Nancy Yde ("Yde"), the benefits coordinator and assistant head of the Human Resource Department at the Schiller Park facility, to express his concerns about the threats. Defendant Yde told Plaintiff Anael to contact the union representative or her when he felt that he could safely return to work. However, Defendants provided no response to the threats and retaliation. In early February 2000, Anael learned for the first time that the reason he had been terminated in August 1998 was for failure to contact Human Resources in August 1998.

Plaintiff, Rich Hardin ("Hardin"), is a shipping employee at the Schiller Park facility.

Beginning in early 2002, he began complaining to his supervisors about safety violations. When Plaintiff Hardin told his supervisors that he would contact OSHA if the problem was not corrected, he was escorted from the building and informed that he was being suspended for threatening a supervisor. Plaintiff Hardin was terminated three-and-a-half days later without pay. He was told he would be paid forty to fifty hours of overtime if he stopped contacting OSHA and other agencies regarding safety violations at the Schiller Park facility.

On April 24, 2002, and again on or about June 11, 2002, Plaintiff Hardin filed complaints with OSHA regarding incidents in which employees at the Schiller Park facility were injured while using a caustic cleaning agent named "HD-50". "HD-50" is designed exclusively for use by trained professional personnel. OSHA sent investigators to the Schiller Park facility and determined that the violations had occurred. On or about June 6, 2002, OSHA issued a Citation and Notification of Penalty. This citation indicated that this was a "repeat" violation.

Since Plaintiff Hardin's April 24, 2002 complaint to OSHA, he has not been given access to his full personnel file, and his health insurance has not been paid by Interstate Brands.

Plaintiff, John Colon ("Colon"), is currently a maintenance mechanic at the Schiller Park facility for over eleven years. In December 2001, Plaintiff Colon was assigned the job of lubricating the baking ovens with graphite. On or about January 7, 2002, Plaintiff Colon filed a Maintenance Work Order, which indicated that the Line 1, Line 2, and Line 3 ovens needed major cleaning to remove the graphite dust inside the housing of the ovens. Plaintiff Colon submitted three more safety work orders through May 3, 2002, and was removed from that job shortly thereafter. Between May 31 and June 14, 2002, the new employee assigned to that job filed three separate Maintenance Work Orders, stating on May 31, 2002, that graphite needed to be removed from the

oven housing on the Line 1, Line 2, and Line 3 ovens. The ovens were not cleaned until after a government inspection. The outside contractors who were cleaning the ovens sealed the area and wore safety clothing and respirators because they considered the substance being removed to be hazardous.

In May 2001, Plaintiff, Daniel Waggener ("Waggener"), began raising safety and health issues with his supervisors and upper management of the Schiller Park facility. From May 2001 through his suspension in August 2002, Waggener brought numerous safety and health concerns to the attention of Defendants, including Charles Sullivan, Russell Hinkle, and Peter Tagalos. In June 2001, Waggener was warned that, if he continued to make complaints about safety and health issues, he would be terminated. After fourteen months during which Waggener was harassed by management, Waggener was suspended indefinitely without pay or benefits; and any and all efforts to address the issues have been ignored by Defendants.

The instant action was filed in the Circuit Court of Cook County on July 17, 2002, and subsequently removed to this Court.

### Count I

Defendants argue that Count I fails to state a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), because the complaint does not allege the elements of a RICO action.

Section 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. 1962(c). In order to state a cause of action

-10-

under §1962(c), a plaintiff must allege "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998) (quoting *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994)(internal quotation marks omitted)).

Section 1961 provides that an enterprise is "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An "enterprise is an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990).

> There must be a structure and goals separate from the predicate acts themselves.
> . . . An enterprise can be formal or informal; there need not be much structure, but
> the enterprise must have some continuity and some differentiation of roles within it.
> . . . There must also be a common purpose of engaging in a course of conduct, . . .
> although the motive for the enterprise need not be an economic one.

*Richmond v. Nationwide Cassel LP*, 52 F.3d 640, 645 (7th Cir. 1995) (internal quotation marks and citations omitted).

Defendants argue that Count I fails to allege the existence of a RICO enterprise.

Count I alleges that Interstate Bakeries "is an enterprise engaged in[,] and the activities of which affect[,] interstate or foreign commerce" and that the individual Defendants are "persons within the meaning of 18 U.S.C. § 1961(3) and as persons employed by said enterprise, conducted and participated, directly and indirectly, in the conduct of the affairs of said enterprise through a pattern of racketeering activity . . . ." (Am. Compl. ¶¶ 81, 82.)

Count I does not adequately allege the existence of a RICO enterprise. "An enterprise 'must be more than a group of people who get together to commit a pattern of racketeering activity.'"

*Richmond*, 52 F.3d at 645 (quoting *United States v. Neapolitan*, 791 F.2d 489, 499-500 (7th Cir.), *cert. denied*, 479 U.S. 940 (1986)). "An enterprise is distinct, separate, and apart from a pattern of racketeering activity[;] although a pattern of racketeering activity may be the means through which the enterprise interacts with society, it is not itself the enterprise, for an enterprise is defined by what it is, not by what it does." *Jennings*, 910 F.2d at 1440. Here, Count I does not allege an enterprise that is separate and distinct from the alleged racketeering activity. Instead, it alleges that Interstate Bakeries and its employees engaged in alleged racketeering activity. "A firm and its employee ... are not an enterprise separate from the firm itself." *Bachman v. Bear, Stearns & Co.*, 178 F.3d 930, 932 (7th Cir. 1999). Therefore, Count I does not allege an enterprise separate from Interstate Bakeries and its employees; and Count I does not adequately plead the enterprise element.

Even if a complaint sufficiently alleges an enterprise, it must also allege "conduct". To plead the "conduct" element, Plaintiffs "must allege that the defendant 'participated in the operation or management of the enterprise itself' and that the defendant played 'some part in directing the enterprise's affairs.'" *Goren*, 156 F.3d at 727 (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 179, 183 (1993)). The defendant must participate in the *operation or management* of the enterprise, not just the activities of the enterprise. *Goren*, 156 F.3d at 727.

Count I merely alleges in a conclusory fashion that Defendants "conducted and participated, directly and indirectly, in the conduct of the affairs of said enterprise through a pattern of racketeering activity . . . ." (Am. Compl. ¶ 82.) It does not allege, nor can it be reasonably inferred from the complaint, that the Defendants participated in the management of any alleged enterprise other than performing the activities of the enterprise. Therefore, Count I does not adequately allege the "conduct" element of a § 1962(c).

Defendants argue that Count I fails to allege a pattern of racketeering activity because none of the alleged state and federal law violations constitute predicate acts.

Under § 1961(5), a "pattern of racketeering activity" is established by at least two predicate acts of racketeering committed within a ten-year period. However, the Supreme Court has held that plaintiffs must show that the predicate acts are related and "that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Therefore, to plead the "pattern" element, Plaintiffs must allege (1) at least two predicate acts of racketeering activity within a ten-year period, (2) that the two predicate acts of racketeering activity are related, and (3) that they amount to or pose a threat of continued criminal activity. *See H.J. Inc.*, 492 U.S. at 239.

Count I sets out thirty-one allegedly "predicate acts" that were committed between August 1997 and August 2002, all of which consist either of "a continuing scheme to violate OSHA rules and regulations in violation of 29 [C.F.R. §] 1926 *et seq.*, violations of the Illinois criminal code, aggravated battery[;] tampering with food, drugs or cosmetics[;] and intimidation." (Am. Compl. ¶ 86.) However, § 1961 provides that the violation of specifically enumerated state and federal laws are predicate acts of racketeering. 18 U.S.C. § 1961(1). Aggravated battery, intimidation and tampering with food, drugs or cosmetics are not listed among the state laws whose violation is a predicate act of racketeering. § 1961(1)(A). Nor is OSHA listed as one of the federal laws the violation of which is a predicate act of racketeering. § 1961(1)(B)-(E). Thus, Count I fails to allege predicate acts under § 1961 and, therefore, fails to allege the "pattern of racketeering activity" elements of a RICO action. Therefore, Defendants' Motions to Dismiss are granted as to Count I.

*Count II*

Defendants argue that Count II should be dismissed because Count II fails to state a RICO conspiracy claim under § 1962(d).

Section 1962(d) provides that it is unlawful for any person to conspire to violate any provision of § 1962. In order to plead a conspiracy claim under § 1962(d), Plaintiffs must allege that each defendant (1) "'agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering'" and (2) "'further agreed that someone would commit at least two predicate acts to accomplish those goals.'" *Brouwer v. Raffensberger, Hughes & Co.*, 199 F.3d 961, 965 (7th Cir. 2000) (quoting *Goren*, 156 F.3d at 732).

> [O]ne does not need to agree personally to be an operator or manager. . . . Rather, one's agreement must be to knowingly facilitate the activities of the operators or managers to whom subsection (c) applies. One must knowingly agree to perform services of a kind which facilitate the activities of those who are operating the enterprise in an illegal manner.

*Brouwer*, 1999 F.3d at 967.

Count II realleges the other allegations in the complaint. Count II further alleges that each Defendant was or is associated with Interstate Brands or Interstate Bakeries and "conspired to and in fact conducted or participated, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity." (Am. Compl. ¶ 91.) Count II also alleges the same pattern of racketeering activity as in Count I and that Defendants conspired to violate § 1962(c). (Am. Compl. ¶¶ 91, 92, 93.)

Count II does not adequately allege a conspiracy claim under § 1962(d). It does not allege, nor can it be reasonably inferred from the complaint, that Defendants agreed to violate RICO. Count II merely alleges that Defendants occupy or occupied certain positions with Interstate Brands

or Interstate Bakeries and that certain Defendants engaged in conduct which allegedly violates OSHA and certain state criminal laws. Count II does not allege that any of the Defendants agreed to participate in the affairs of an enterprise through a pattern of racketeering or to facilitate the activities of any manager or operator of an enterprise or that any of the Defendants agreed that someone would commit at least two predicate acts to accomplish those goals. Furthermore, as was noted above, the amended complaint fails to allege any predicate acts. The acts alleged in Count I, which are incorporated by reference into Count II, are not predicate acts under § 1961(1). Count II does not allege any other acts that would constitute predicate acts under § 1961(1). Therefore, Defendants' Motions to Dismiss are granted as to Count II.

### Res Judicata

Defendants also argue that this action is barred by the doctrine of *res judicata*. Under the doctrine of *res judicata*, "'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1232 (7th Cir. 1986) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). A case will be dismissed on *res judicata* grounds if Defendants can prove (1) an identity of the parties or their privies, (2) an identity of the causes of action, and (3) a final judgment on the merits. *Anderson v. Chrysler Corp.*, 99 F.3d 846, 852 (7th Cir. 1996). The district court applies the "same transaction" test, meaning that "once 'a transaction has caused injury, all claims arising from that transaction must be brought in one suit or be lost.' . . . 'two claims are one for purposes of *res judicata* if they are based on the same, or nearly the same, factual allegations.'" *Anderson*, 99 F.3d at 852 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir. 1986)).

Defendants argue that dismissal on *res judicata* grounds is appropriate because the

-15-

allegations in the amended complaint are the same as those in complaints that were dismissed in other actions discussed above.

The claims in the amended complaint are barred by the doctrine of *res judicata*. The plaintiffs are suing the same defendants as in *Anael I*, *Anael II*, and *Anael III*. Although Plaintiffs have now brought their claims under RICO, the RICO claims are based on nearly the same factual allegations as the claims in *Anael I*, *Anael II*, and *Anael III* - - asbestos contamination at the Schiller Park facility and Anael's discharge, to name a few. Finally, as was noted above, the previous actions were dismissed. Thus, these claims have been litigated to a final judgment and are barred by the doctrine of *res judicata*. Therefore, the amended complaint is dismissed.

Because the Court holds that the amended complaint fails to state a claim under RICO and, alternatively, is barred by the doctrine of *res judicata*, the Court need not reach the issue of whether Plaintiffs' RICO claims are precluded or preempted by federal labor laws or the IWCA.

### CONCLUSION

For the reasons stated above, the amended complaint is dismissed with prejudice.

**IT IS SO ORDERED.**

John W. Darrah, Judge
United States District Court

Date: _August 14, 2003_